```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
       UNITED STATES OF AMERICA,       ) Docket No. 18 CR 743-6
 4                                      )
                            Plaintiff,)
 5                                      )
                    vs.                 )
 6                                      )
       ASHLEY WEATHERSBY,               ) Chicago, Illinois
 7                                      ) July 23, 2021
                            Defendant.) 11:41 o'clock a.m.
 8

 9        TRANSCRIPT OF PROCEEDINGS - VIDEOCONFERENCE SENTENCING
                  BEFORE THE HONORABLE JOHN Z. LEE
10

11     VIDEOCONFERENCE APPEARANCES:

12
       For the Plaintiff:          HON. JOHN R. LAUSCH, JR.
13                                 United States Attorney
                                   BY:  MR. CHARLES W. MULANEY, III
14                                 219 S. Dearborn St., Suite 500
                                   Chicago, Illinois  60604
15

16     For the Defendant:          FEDERAL DEFENDER PROGRAM
                                   BY:  MR. SANTINO COLEMAN
17                                 55 East Monroe Street, Suite 2800
                                   Chicago, Illinois  60603
18

19     Court Reporter:             MR. JOSEPH RICKHOFF
                                   Official Court Reporter
20                                 219 S. Dearborn St., Suite 2128
                                   Chicago, Illinois  60604
21                                 (312) 435-5562

22              * * * * * * * * * * * * * * * *

23                     PROCEEDINGS RECORDED BY
                       MECHANICAL STENOGRAPHY
24              TRANSCRIPT PRODUCED BY COMPUTER

25
```

1          (Proceedings had via videoconference:)

2              THE CLERK:  Case 18 CR 743-6, United States of

3   America vs. Ashley Weathersby.  For change of plea.

4              THE COURT:  Who is representing the government,

5   please?

6              MR. MULANEY:  Good morning, Charles Mulaney for the

7   United States.

8              THE COURT:  Who is appearing on behalf of the

9   defendant?

10              MR. COLEMAN:  Good morning, Santino Coleman, Federal

11   Defender Program, here on behalf of Ms. Ashley Weathersby.

12              THE COURT:  All right.

13              Ms. Weathersby, can you see and hear me?

14              THE DEFENDANT:  Yes.

15              THE COURT REPORTER:  I'm sorry, I can't hear you, Ms.

16   Weathersby.

17              THE CLERK:  You're on mute.

18          (No response.)

19              THE COURT:  Ms. Weathersby, let's try it again.  Can

20   you see and hear me?

21              THE DEFENDANT:  I can hear you.

22              Can you hear me?

23              THE COURT:  Yes.

24              So, we're here for a change of plea hearing in this

25   case, and I understand that the defendant wishes to change her

1  plea and enter a plea of guilty as to Counts 1 and 11 of the

2  indictment.

3          Before we proceed, I'm going to ask Ms. Acevedo to

4  please swear in Ms. Weathersby.

5      (Defendant sworn.)

6          THE COURT:  You can put your hand down, ma'am.

7          So, Ms. Weathersby, before I accept your plea, I have

8  to make several determinations.  First of all, I have to make

9  sure that you're competent to enter a plea today; in other

10  words, that you understand the nature of the proceedings and

11  the purpose of today's hearing.

12          I must also make sure that you've had the assistance

13  of an attorney for your case, and that you understand that by

14  pleading guilty today, you'll be waiving your rights to a

15  trial in this case.

16          I also have to make sure that you understand the

17  nature of the charges to which you're pleading and the

18  potential consequences of a guilty plea as to those charges.

19          I also have to make sure that your decision to plead

20  guilty is a voluntary act on your part, and that there's a

21  sufficient independent factual basis for your plea.

22          So, those are the items that we'll go over during

23  this hearing.  If at any point in time you wish to take a

24  break to speak privately with your attorney, please let me

25  know and I'd be more than happy to accommodate you.

```
 1              All right, ma'am?
 2              THE DEFENDANT:  Okay.
 3              THE COURT:  I do want to make sure you understand
 4   that you have the right not to make any statements in this
 5   case that are incriminating.  However, if you wish to plead
 6   guilty, you must answer my questions; and, in answering my
 7   questions and making other statements today, you will be
 8   making statements that will be incriminating, and you'll be
 9   giving up your right not to testify against yourself.
10              Do you understand that, ma'am?
11              THE DEFENDANT:  Yes.
12              THE COURT:  Do you still wish to proceed?
13              THE DEFENDANT:  Yes.
14              THE COURT:  All right.  Very well.
15              I also want to make sure you understand that you're
16   under oath today and if you answer any of my questions
17   falsely, your answers may subject you to a separate
18   prosecution for perjury or making a false statement.
19              Do you understand that?
20              THE DEFENDANT:  Yes.
21                              EXAMINATION
22   BY THE COURT:
23   Q.  Can you state your full name, please.
24   A.  Ashley Danielle Weathersby.
25   Q.  Ms. Weathersby, are you a United States citizen?
```

1  A.  Yes.

2  Q.  How old are you, ma'am?

3  A.  36.

4  Q.  How far did you get in school?

5  A.  I graduated high school and a program at Everest.

6  Q.  What type of work, if any, have you been doing over the

7  course of the last three or four years?

8  A.  So, I worked in television as an extras casting assistant

9  for a TV show.

10  Q.  Are you currently taking any prescription medications of

11  any kind?

12  A.  Yes, but it's more so just ibuprofen right now because I

13  had surgery a couple months ago.

14  Q.  Are you currently under the influence of any other drug,

15  medication or alcoholic beverage of any kind?

16  A.  No.

17  Q.  You understand, ma'am, the purpose of today's hearing is

18  to allow you to change your plea from not guilty to guilty

19  with regards to Count 1 and 11 of the indictment?

20  A.  Yes.

21           THE COURT:  Mr. Coleman, do you have any reason to

22  question Ms. Weathersby's competency for the purpose of

23  today's hearing?

24           MR. COLEMAN:  No, your Honor.

25           THE COURT:  In light of Ms. Weathersby's responses to

1   my questions and her demeanor here today, the Court hereby

2   finds that she is competent to enter a guilty plea today.

3   BY THE COURT:

4   Q.  So, Ms. Weathersby, Mr. Coleman has been your attorney for

5   the case; is that correct?

6   A.  Yes.

7   Q.  Have you discussed the indictment with him?

8   A.  Yes.

9   Q.  Have you had enough time to speak with him about the case

10  in general?

11  A.  I have.

12  Q.  Do you have any questions that you would like to ask him

13  about the case as you sit here today?

14  A.  No.

15  Q.  Are you satisfied with the representation that he's been

16  providing you in this case?

17  A.  Yes.

18  Q.  So, I want to make sure that you understand the rights

19  that you have to a trial in this case.

20          You understand, ma'am, that you have the right to

21  plead not guilty to any charge that is pending against you and

22  to maintain a not guilty plea throughout the entire case?

23          You understand that?

24  A.  Yes.

25  Q.  If you decided to go to trial, at the trial you'd be

1    presumed to be innocent and the government would have to prove

2    your guilt beyond a reasonable doubt.

3           Do you understand that?

4    A.  Yes.

5    Q.  And at the trial, you have the right to the assistance of

6    an attorney for your defense, during the trial and every other

7    stage of this proceeding.

8           Do you understand that?

9    A.  Yes.

10    Q.  And at the trial, you have the right to see and hear all

11    the witnesses and have them cross-examined in your defense.

12           Do you understand that?

13    A.  Yes.

14    Q.  And if this case were to go to trial, you'd have the

15    absolute right to decide not to testify unless you voluntarily

16    chose to testify in your own defense.

17           Do you understand that?

18    A.  Yes.

19    Q.  And if during the trial you decided not to testify, I

20    would order the jury not to draw any inference or suggestion

21    of guilt from your decision not to testify.

22           Do you understand that?

23    A.  Yes.

24    Q.  Also at a trial, you have the right to compel witnesses to

25    come and testify on your behalf.

1      Do you understand that?

2    A.  Yes.

3    Q.  The trial could be before a jury or it could proceed

4    before a judge.  But in order for your trial to proceed before

5    a judge, the government would have to agree to that procedure

6    and you would have to agree to that procedure and I would have

7    to approve it.

8      Do you understand that?

9    A.  Yes.

10   Q.  And if you decided to go to a jury trial, you and your

11   attorney would have the right to participate in the selection

12   of the jury for the trial.

13     Do you understand that?

14   A.  Yes.

15   Q.  So, let me describe that in a bit more detail.

16     If you decided to take this case to a jury trial, you

17   and your attorney would have the right to exclude a certain

18   number of individuals from serving on the jury for two basic

19   reasons.  First of all, you could seek to exclude an

20   individual for cause, meaning you do not believe that that

21   particular person could be a fair juror in your case.

22     And second, you could seek to exclude a certain

23   number of individuals from serving on the jury for any reason

24   whatsoever using what is known as a peremptory challenge.

25     Are you familiar with those procedures?

1   A.  Yes.

2   Q.  And at the trial, once the jury was selected and heard all

3   of the evidence and the arguments by the lawyers, in order to

4   arrive at a verdict, the jury would have to arrive at a

5   verdict unanimously.

6           Do you understand that?

7   A.  Yes.

8   Q.  And if you decide to proceed to trial, you would have the

9   right to appeal from any legal errors committed during the

10  trial.

11          Do you understand that?

12  A.  Yes.

13  Q.  Did you discuss your trial rights with your attorney?

14  A.  Yes.

15  Q.  Do you understand, ma'am, that by entering a plea of

16  guilty today and if that plea is accepted by the Court, there

17  will be no trial and you will have waived or, in other words,

18  you will have given up your rights to a trial, as well as all

19  of those other rights associated with the trial that we just

20  discussed.

21          Do you understand that?

22  A.  Yes.

23  Q.  In other words, if you plead guilty and I accept your

24  plea, I will be entering a finding of guilt today and there

25  will be no trial.

1      Do you understand that, ma'am?

2  A.  Yes.

3  Q.  Now, I've been provided a copy of the plea agreement.

4  It's a multi-page document, 21 pages.  And on the final page,

5  there are four signature blocks, including a signature line

6  for Ashley Weathersby.  And there's a signature above that

7  line.

8      Is that your signature, ma'am?

9  A.  Yes.

10  Q.  Did you review the document before you signed it?

11  A.  I did, yes.

12  Q.  Did you discuss the contents of the document with your

13  attorney before you signed it?

14  A.  Yes.

15  Q.  Is there anything about the document that you do not

16  understand as you sit here today?

17  A.  No, I understand it.

18  Q.  Did anyone threaten you or pressure you in any way to sign

19  the document?

20  A.  No.

21  Q.  Did anyone make any promises to you to get you to sign the

22  document other than what is contained in the document itself?

23  A.  No.

24  Q.  Did anyone -- let's see.

25      And you understand, ma'am, that under the terms of

1   this plea agreement, you're agreeing to plead guilty as to

2   Counts 1 and 11 of the indictment?

3   A.  Yes.

4   Q.  And, so, did you sign this plea agreement voluntarily and

5   completely based upon your own free will?

6   A.  Yes.

7   Q.  I want to make sure, Ms. Weathersby, that you understand

8   the potential consequences of a guilty plea as to those

9   counts.

10          THE COURT:  Will the government please inform Ms.

11  Weathersby of the maximum potential statutory penalties with

12  regard to the counts to which he's pleading?

13          MR. MULANEY:  Yes, your Honor.  And I'll refer to

14  Page 6 of the plea agreement, and 7, which set forth the

15  maximum penalties for both counts.

16          Count 1 carries a maximum sentence of 20 years'

17  imprisonment, maximum fine of $250,000 or twice the gross gain

18  or gross loss resulting from the offense, whichever is

19  greater, as well as a term of supervised release of not more

20  than three years.

21          Count 11 carries a sentence of two years'

22  imprisonment, which is required to be consecutive to any other

23  sentence imposed.  That count also carries a $250,000 maximum

24  fine and a term of supervised release of not more than one

25  year.

1          In addition, defendant would be ordered to pay

2     restitution in the amount determined by the Court and assessed

3     $100 each count to which she's pled guilty.

4     BY THE COURT:

5     Q.   So, Ms. Weathersby, let me take you through that.

6          So, with regard to Count 1, the maximum statutory

7     penalty is 20 years of imprisonment, a term of supervised

8     release of three years and a maximum fine of $250,000 or two

9     times the gross gain or loss, whichever is greater.

10         Do you understand that, ma'am?

11    A.   Yes.

12    Q.   With regard to Count 11, the maximum potential penalty is

13    two years, which has to be served consecutive to any sentence

14    that is imposed as to Count 1.  Furthermore, there's a maximum

15    fine of $250,000 and a maximum term of supervised release of

16    one year.

17         Do you understand that?

18    A.   Yes.

19    Q.   So, in total, the maximum statutory penalties for the two

20    counts is 22 years of imprisonment, a maximum fine of $500,000

21    or two times the gross gain or loss, and a period of

22    supervised release of up to three years.

23         Do you understand that?

24    A.   Yes.

25    Q.   Furthermore, restitution must be ordered by the Court in

1  the amount to be determined, and a special assessment of $100

2  for each count, for a total of $200, must be imposed by the

3  Court and will be due at sentencing.

4       Do you understand that?

5  A.  Yes.

6  Q.  Furthermore, if the Court accepts your plea of guilty,

7  you'll be adjudged guilty of a felony and such adjudication of

8  guilt may deprive you of valuable civil rights that you have

9  now or may have in the future, such as the right to vote, the

10  right to hold public office, the right to serve on the jury,

11  and the right to possess firearms.

12       Do you understand that, ma'am?

13  A.  Yes.

14  Q.  And, finally, you understand that the indictment and the

15  plea agreement will be placed upon the public records of this

16  court and will be available to anyone who wishes to see it?

17       You understand that?

18  A.  Yes.

19  Q.  Let me talk to you briefly about sentencing.

20       If you plead guilty and your plea is accepted, your

21  sentence will be determined by me after I consider the

22  advisory Sentencing Guidelines and other statutory sentencing

23  factors.

24       Have you discussed with your attorney how the

25  Sentencing Guidelines might impact your case?

1   A.  Yes.

2   Q.  Do you understand, ma'am, that the provisions in the plea

3   agreement that discuss the parties' respective positions as to

4   those Guidelines are preliminary in nature only and they're

5   not binding upon the Court?  In other words, I do not have to

6   follow them.

7           Do you understand that?

8   A.  Yes.

9   Q.  I will not be able to determine what the sentence should

10  be or what the Guideline range should be until after a

11  presentence investigation is performed.

12          Do you understand that?

13  A.  Yes.

14  Q.  Now, you will be asked to give information for that

15  investigation.  Your attorney may be present if you wish.  And

16  you must cooperate with the Probation Office in that

17  investigation.

18          Do you understand that?

19  A.  Yes.

20  Q.  Now, there's also a provision in the plea agreement with

21  regard to the government potentially filing a motion under

22  Section 5K1.1 of the Sentencing Guidelines.

23          Now, if the government does decide to make such a

24  motion, it will file such a motion or make such a motion to

25  the Court and it will recommend a term of imprisonment of 50

1    percent of -- I just want to make sure that that's right -- it

2    will recommend a term of imprisonment of 50 percent of the low

3    end of the Guideline range.  You and your attorney can argue

4    for any sentence that you think is appropriate, and it's up to

5    me to decide whether or not I will accept the government's

6    motion.

7          You understand that?

8    A.  Yes.

9    Q.  Even if I reject the government's motion, you will still

10    be bound by your plea of guilty and I will not allow you to

11    withdraw your guilty plea.

12          Do you understand that?

13    A.  Yes.

14    Q.  Also, the government may decide not to make such a motion.

15    And if that's the case, then both sides would be free to

16    recommend any sentence that they think is appropriate.  And I

17    will impose sentence after I consider the statutory sentencing

18    factors and the Guideline range.  But even if the government

19    does not make a motion under Section 5K1.1, you will still be

20    bound by your plea of guilty and I will not allow you to

21    withdraw your plea.

22          Do you understand that, ma'am?

23    A.  Yes.

24    Q.  Also, the final decision as to what your sentence should

25    be rests with me.  And I may sentence you to a sentence that

1   is more severe than what you might anticipate based upon the

2   statements in the plea agreement, as well as any conversations

3   you've had with your attorney.

4        Do you understand that?

5   A.  Yes.

6   Q.  And even if a sentence is more severe than what you might

7   anticipate, you still will be bound by your plea of guilty and

8   you'll have no right to withdraw it.

9        Do you understand that?

10  A.  Yes.

11  Q.  Now, with regard to your rights to appeal, under the plea

12  agreement, you understand that you're waiving all the rights

13  that you have to appeal, both the conviction and the sentence,

14  so long as it's within the statutory maximums provided by law,

15  as well as any part of the sentence or the manner in which the

16  sentence is determined.

17       Do you understand that?

18  A.  Yes.

19  Q.  I do want to inform you that your agreement to waive your

20  appellate rights does not apply to a claim of involuntariness

21  or ineffective assistance of counsel which related to the

22  waiver, nor are you prohibited from seeking a reduction in

23  sentence based directly on a future change in the law that is

24  applicable to you and that, prior to filing any request for

25  relief, has been expressly made retroactive by an act of

1   Congress, the Supreme Court or United States Sentencing

2   Commission.

3         I will now proceed to determine whether there's an

4   independent factual basis for the plea.

5         So, Ms. Weathersby, I'm going to ask the government

6   to please state the factual evidence that it would present at

7   trial if this case were to go to trial.  I want you to listen

8   very carefully to what the government has to say, and

9   afterwards I will ask you whether you agree that the factual

10   statements are true and correct.

11         Do you understand that, ma'am?

12   A.  Yes.

13   Q.  And I believe the government will be referring to the plea

14   agreement, if you want to follow along, starting paragraph --

15   well, starting on Page 2, Paragraph 6.

16         THE COURT:  Go ahead.  Please proceed.

17         MR. MULANEY:  Yes, your Honor.

18         And I am reading from that paragraph, which states:

19   In pleading guilty, defendant admits the following facts and

20   that those facts establish her guilt beyond a reasonable doubt

21   and constitute relevant conduct, pursuant to Guideline Section

22   1B1.3.

23         Beginning no later than in or about November 2013 and

24   continuing until in or about December 2015, at Chicago, in the

25   Northern District of Illinois, Eastern Division, and

1   elsewhere, defendant, together with Brandon Pitts, Corey

2   Logsdon, Korey Isbell, Yoshimi Henry, Kewan Watts, and Angelo

3   Steele, knowingly devised, intended to devise and participated

4   in a scheme to defraud to obtain money and property in the

5   form of unemployment insurance benefit funds from the State of

6   Illinois by means of materially false and fraudulent

7   pretenses, representations and promises, and in furtherance

8   thereof used interstate wires, in violation of Title 18,

9   United States Code, Section 1343.

10          In addition, no later than August 11th of 2015, at

11  Chicago, in the Northern District of Illinois, Eastern

12  Division, and elsewhere, defendant and Brandon Pitts did

13  knowingly transfer, possess and use without lawful authority

14  the means of identification of another person, namely, the

15  names, date of birth and Social Security number of Victim LL,

16  during and in relation to the wire fraud offense described in

17  Count 1 of the superseding indictment, knowing that the

18  identification belonged to another person, in violation of

19  Title 18, United States Code, Section 1028A(a)(1).

20          Specifically, between 2012 and mid-2015, defendant

21  held a part-time position at Healthcare Provider A, that

22  allowed her to access the personal identification information,

23  such as names, dates of birth, Social Security numbers, and

24  driver's license numbers, of Healthcare Provider A's patients,

25  which will be referred to as the personal identification

1    information.

2            Starting in 2013, defendant began selling personal

3    identification information for Healthcare Provider A's

4    patients to Anthony Henry.  Between mid-October 2013 and

5    mid-2015, defendant sold Anthony Henry personal identification

6    information for 50 to 100 Healthcare Provider A patients per

7    week.

8            Beginning in late 2013, defendant sold personal

9    information -- personal identification information -- of

10   Healthcare Provider A patients to co-schemer Corey Logsdon.

11   Defendant sold that information to Logsdon until mid-2014

12   without the authorization or permission of Healthcare Provider

13   A's patients.  During that period, defendant sold to Logsdon

14   personal identification information of approximately 100

15   Healthcare Provider A patients per week.

16           Beginning in mid-2014, defendant sold personal

17   identification information of Healthcare Provider A patients

18   to co-schemer Angelo Steele.  Defendant sold that information

19   to Steele until approximately mid-2014 without the

20   authorization or permission of Healthcare Provider A patients.

21   During that period, defendant sold to Steele the personal

22   identification information of approximately 100 Healthcare

23   Provider A patients per week.

24           Beginning in mid-2014, defendant sold personal

25   identification information of Healthcare Provider A patients

1   to Jerome Pace.  Defendant sold that information to Pace until

2   approximately June 2015 without the authorization or

3   permission of the Healthcare Provider A patients.  During that

4   period, defendant sold to Pace the personal identification

5   information of approximately 100 to 200 Healthcare Provider A

6   patients per week.

7         Beginning in July 2014, defendant sold personal

8   identification information of Healthcare Provider A patients

9   to co-schemer Brandon Pitts.  Defendant sold that information

10  to Pitts until approximately June 2015 without the

11  authorization or permission of the Healthcare Provider A

12  patients.  During that period, defendant sold to Pitts

13  personal identification information of approximately 100 to

14  200 Healthcare Provider A patients.

15        Defendant acknowledges that unemployed individuals in

16  Illinois who were terminated without fault could file a claim

17  over the Internet with the Illinois Department of Employment

18  Security, IDES, and receive unemployment benefits during the

19  time period in which they were unemployed, were able to work

20  and hadn't been actively seeking work.

21        Defendant acknowledges that co-schemer Logsdon, Pitts

22  and Steele used the personal identification they received from

23  her to file fraudulent claims for unemployment insurance

24  benefits with the IDES in the names of Healthcare Provider A

25  patients.  Defendant acknowledges that Logsdon, Pitts and

1   Steele intended to use and were using the unemployment

2   benefits issued as a result of their fraudulent claims for

3   their own benefit.

4         More specifically, as charged in Count 1 of the

5   superseding indictment, at some point prior to August 11th,

6   2015, Weathersby provided to co-schemer Pitts the name, Social

7   Security number and driver's license number of victim LL; and,

8   as a result, Pitts filled out an online application for IDES

9   benefits using that information.  Defendant knew at the time

10  that Victim LL was a real person, and that defendant was not

11  authorized to use or possess the name, Social Security number

12  and driver's license number of Victim LL or provide that

13  information to co-schemer Pitts.

14        Defendant acknowledges that:  One, Pitts used the

15  personal identification information of Victim LL provided to

16  Pitts by defendant to make an IDES claim in the name of Victim

17  LL; two, as a result, Chase sent by U.S. mail a Chase prepaid

18  debit card associated with an account ending in 2455 in the

19  name of Victim LL to the address provided by Pitts in a

20  fraudulent online application; three, Pitts or one of

21  defendant's co-schemers retrieved the card mailed to that

22  address and on or about August 11th, 2015, Pitts used the IDES

23  debit card in the name of Victim LL to withdraw $800 from the

24  Chase ATM located in Chicago, Illinois; and, four, that

25  withdrawal caused a wire communication in interstate commerce;

1  namely, an electronic withdrawal request message routed to the

2  Chase data center located in Wilmington, Delaware.

3         Defendant further acknowledges that during the

4  scheme, defendant's co-schemers filed false and fraudulent

5  unemployment insurance claims in the names of and using the

6  personal identification information of at least 892

7  individuals, resulting in intended loss to IDES of

8  approximately $8.8 million in unemployment benefits and actual

9  loss to IDES totalling 1.5 million in unemployment benefits.

10 The loss to IDES that was reasonably foreseeable to defendant

11 is between 95,000 to 150,000.

12 BY THE COURT:

13 Q.  So, Ms. Weathersby, having heard the factual evidence the

14 government would present at trial if this case were to go to

15 trial, do you agree that those factual statements are true and

16 correct?

17 A.  Yes.

18         THE COURT:  Is the government's position that Ms.

19 Weathersby's admission is sufficient to support a plea of

20 guilty as to Counts 1 and 11 of the superseding indictment?

21         MR. MULANEY:  Yes, your Honor.

22 BY THE COURT:

23 Q.  All right, Ms. Weathersby, I will now proceed to take your

24 plea.  Let's do it one count at a time.

25         How do you plead as to Count 1 of the superseding

 1   indictment?

 2   A.   Guilty.

 3   Q.   And how do you plead as to Count 11 of the superseding

 4   indictment?

 5   A.   Guilty.

 6        THE COURT:  It is the finding of the Court that the

 7   defendant is fully competent and capable of entering an

 8   informed plea; that she is aware of the nature of the charges

 9   and the potential consequences of the plea; and, that her plea

10   of guilty is a knowing and voluntary plea supported by

11   independent basis in fact, containing each of the elements of

12   the offense.  Accordingly, the Court hereby accepts Ms.

13   Weathersby's plea of guilty as to Counts 1 and 11 of the

14   superseding indictment.

15        So, Ms. Weathersby, I will order a presentence

16   investigation to be conducted to assist me in sentencing.  As

17   I said, you'll be asked to give information for that

18   investigation, and your attorney may be present if you wish.

19   You must cooperate with the Probation Office in the

20   preparation of that investigation -- in the conduct of that

21   investigation.

22        Do you understand that, ma'am?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Carmen, can you provide us with a

25   sentencing schedule, please.

1          THE CLERK:  Defendants' sentencing memorandum and

2     objections to the report are to be filed by October 18th and

3     the government's response by October 25th.

4          Sentencing is scheduled for November 2nd at 1:30 p.m.

5          In the event that the government is seeking an order

6     of forfeiture, a motion for entry of a preliminary order of

7     forfeiture should be filed by October 1st.  Any objections or

8     responses to the motion should be filed by October 18th.

9          The Probation Office is directed to provide the

10    parties with a copy of its sentencing recommendation.

11         THE COURT:  Ms. Weathersby, I want to remind you that

12    between now and sentencing, you're still bound by the

13    conditions of your release.

14         Do you understand that, ma'am?

15         THE DEFENDANT:  Yeah.

16         THE COURT:  Is there anything else I can address for

17    the government today?

18         MR. MULANEY:  No, your Honor.

19         I believe there may be defendants implicated by Ms.

20    Weathersby's potential cooperation that may not be sentenced

21    before her.  So, I will confer with defense counsel and raise

22    to the Court if there's any reason to delay her sentencing

23    further.

24         THE COURT:  That's fine.

25         Mr. Coleman, anything else I can address for

1  defendant?

2          MR. COLEMAN:  No, your Honor.

3          THE COURT:  All right.

4          Thank you very much.  We're adjourned.

5          MR. MULANEY:  Thank you.

6          MR. COLEMAN:  Thank you.

7                      *    *    *    *    *

8

9  I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.
10

11
   /s/ Joseph Rickhoff                    December 1, 2021
12 Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25